**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-2240

In re: CIRCUIT CITY STORES, INCORPORATED; CIRCUIT CITY STORES
WEST COAST, INCORPORATED; INTERTAN, INC.; VENTOUX
INTERNATIONAL, INC.; CIRCUIT CITY PURCHASING COMPANY, LLC;
CC AVIATION, LLC; CC DISTRIBUTION COMPANY OF VIRGINIA, INC.;
CIRCUIT CITY PROPERTIES, LLC; KINZER TECHNOLOGY, LLC; ABBOTT
ADVERTISING AGENCY, INCORPORATED; PATAPSCO DESIGNS, INC.;
SKY VENTURE CORP.; PRAHS, INC.(N/A); XSSTUFF, LLC; MAYLAND MN,
LLC; COURCHEVEL, LLC; ORBYX ELECTRONICS, LLC; CIRCUIT CITY
STORES PR, LLC,

                                              Debtors.

------------------------------

ALFRED H. SIEGEL, Trustee of the Circuit City Stores, Inc. Liquidating Trust,

                    Plaintiff – Appellee,

          v.

JOHN P. FITZGERALD, III, Acting United States Trustee for Region 4,

                    Defendant – Appellant.

------------------------------

ACADIANA MANAGEMENT GROUP, LLC; ALBUQUERQUE-AMG
SPECIALTY HOSPITAL, LLC; CENTRAL INDIANA-AMG SPECIALTY
HOSPITAL, LLC; LTAC HOSPITAL OF EDMOND, LLC; HOUMA-AMG
SPECIALTY HOSPITAL, LLC; LTAC OF LOUISIANA, LLC; LAS VEGAS-
AMG SPECIALTY HOSPITAL, LLC; WARREN BOEGEL; BOEGEL FARMS,
LLC; THREE BO'S, INC.,

                    Amici Supporting Appellee.

**No. 19-2255**

In re: CIRCUIT CITY STORES, INCORPORATED; CIRCUIT CITY STORES WEST COAST, INCORPORATED; INTERTAN, INC.; VENTOUX INTERNATIONAL, INC.; CIRCUIT CITY PURCHASING COMPANY, LLC; CC AVIATION, LLC; CC DISTRIBUTION COMPANY OF VIRGINIA, INC.; CIRCUIT CITY PROPERTIES, LLC; KINZER TECHNOLOGY, LLC; ABBOTT ADVERTISING AGENCY, INCORPORATED; PATAPSCO DESIGNS, INC.; SKY VENTURE CORP.; PRAHS, INC.(N/A); XSSTUFF, LLC; MAYLAND MN, LLC; COURCHEVEL, LLC; ORBYX ELECTRONICS, LLC; CIRCUIT CITY STORES PR, LLC,

                Debtors.

------------------------------

ALFRED H. SIEGEL, Trustee of the Circuit City Stores, Inc. Liquidating Trust,

                Plaintiff – Appellant,

      v.

JOHN P. FITZGERALD, III, Acting United States Trustee for Region 4,

                Defendant – Appellee.

------------------------------

ACADIANA MANAGEMENT GROUP, LLC; ALBUQUERQUE-AMG SPECIALTY HOSPITAL, LLC; CENTRAL INDIANA-AMG SPECIALTY HOSPITAL, LLC; LTAC HOSPITAL OF EDMOND, LLC; HOUMA-AMG SPECIALTY HOSPITAL, LLC; LTAC OF LOUISIANA, LLC; LAS VEGAS-AMG SPECIALTY HOSPITAL, LLC; WARREN BOEGEL; BOEGEL FARMS, LLC; THREE BO'S, INC.,

                Amici Supporting Appellant.

Appeals from the United States Bankruptcy Court for the Eastern District of Virginia, at Richmond. Kevin R. Huennekens, Bankruptcy Judge. (3:08-bk-35653)

2

Argued: December 8, 2020                        Decided: April 29, 2021

---

Before KING and QUATTLEBAUM, Circuit Judges, and TRAXLER, Senior Circuit Judge.

---

Affirmed in part, reversed in part, and remanded by published opinion. Judge King wrote the majority opinion, in which Senior Judge Traxler joined. Judge Quattlebaum wrote a separate opinion concurring in part and dissenting in part.

---

**ARGUED:** Jeffrey E. Sandberg, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant/Cross-Appellee. Andrew William Caine, PACHULSKI STANG ZIEHL & JONES LLP, Los Angeles, California, for Appellee/Cross-Appellant. **ON BRIEF:** Joseph H. Hunt, Assistant Attorney General, Mark B. Stern, Civil Division, Ramona D. Elliott, Deputy Director/General Counsel, P. Matthew Sutko, Associate General Counsel, Beth Levene, Executive Office for United States Trustees, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant/Cross-Appellee. Lynn L. Tavenner, Paula S. Beran, David N. Tabakin, TAVENNER & BERAN, PLC, Richmond, Virginia, for Appellee/Cross-Appellant. Bradley L. Drell, Heather M. Mathews, GOLD, WEEMS, BRUSER, SUES & RUNDELL, Alexandria, Lousiana, for Amici Acadiana Management Group, LLC, Albuquerque-AMG Specialty Hospital, LLC, Central Indiana-AMG Specialty Hospital, LLC, LTAC Hospital of Edmond, LLC, Houma-AMG Specialty Hospital, LLC, LTAC of Louisiana, LLC, Las Vegas-AMG Specialty Hospital, LLC, Warren Boegel, Boegel Farms, LLC, and Three Bo's, Inc.

---

3

KING, Circuit Judge:

These consolidated appeals present two constitutional issues concerning changes made to the bankruptcy laws nearly four years ago. Alfred H. Siegel, Trustee of the Circuit City Stores, Inc., Liquidating Trust (the "Circuit City Trustee"), sought a ruling in 2019 on his liability for quarterly fees assessed under a 2017 Amendment to the bankruptcy fees provisions of the United States Code (the "2017 Amendment"). In response, the Bankruptcy Court for the Eastern District of Virginia ruled that the fees aspect of the 2017 Amendment is unconstitutional. *See In re Circuit City Stores, Inc.*, No. 08-35653 (Bankr. E.D. Va. July 15, 2019), ECF No. 2 (the "Bankruptcy Opinion"). That ruling was based on a perceived lack of uniformity between quarterly fees in the two types of bankruptcy court districts, that is, U.S. Trustee districts and Bankruptcy Administrator districts.

John P. Fitzgerald, III, the Acting U.S. Trustee for Region 4 (the "U.S. Trustee"), maintains that the Bankruptcy Opinion erred in its uniformity ruling and has appealed. The Circuit City Trustee, on the other hand, has cross-appealed a separate aspect of the Opinion that rejected his claim concerning retroactive application of the 2017 Amendment. In November 2019, the Circuit City Trustee and the U.S. Trustee jointly certified these appeals to this Court.[1] We granted their joint petition for permission to appeal and

---

[1] The U.S. Trustee and the Circuit City Trustee jointly sought permission to appeal from this court, pursuant to 28 U.S.C. § 158(d)(2)(A). That provision confers jurisdiction on a court of appeals to consider a direct appeal from a bankruptcy court, bypassing the district court, if the statutory conditions are satisfied.

consolidated the appeals. The U.S. Trustee's appeal is designated as No. 19-2240, and the Circuit City Trustee's cross-appeal is designated as No. 19-2255.

As explained below, we rule in favor of the U.S. Trustee in each appeal. That is, we reverse the Bankruptcy Opinion's uniformity decision challenged by the U.S. Trustee, and we affirm the Opinion's retroactivity decision challenged by the Circuit City Trustee. As a result, we remand to the bankruptcy court for such other and further proceedings as may be appropriate.

## I.

A review of the pertinent background and operations of the bankruptcy courts is essential to an understanding of these proceedings. Before addressing the legal issues presented, we will discuss some historical context of those courts, as well as the factual background of these proceedings.

## A.

The bankruptcy courts operate under two distinct programs for the handling of their proceedings — the Trustee program and the Bankruptcy Administrator program. Congress initiated this two-program system in 1978 when it launched the Trustee pilot program within the Department of Justice. The Trustee pilot program was successful and became a permanent fixture in 1986. Eighty-eight of the 94 judicial districts operate with U.S.

Trustees. The other districts — in Alabama and North Carolina — utilize the Bankruptcy Administrator program, which is overseen by the Judicial Conference of the United States.[2]

These bankruptcy court programs utilize distinct funding sources. The judiciary's general budget, overseen by the Judicial Conference, funds the Bankruptcy Administrator program. On the other hand, the bankruptcy debtors in Trustee districts primarily fund the Trustee program. Although annual congressional appropriations provide support for the Trustee program, Congress anticipated that debtor-paid fees would completely offset the program's cost. Debtor fees include Chapter 11 quarterly fees, which are based on quarterly "disbursements" that debtors make to their creditors until the cases are "converted or dismissed." *See* 28 U.S.C. § 1930(a)(6)(A).

At their inception, the Bankruptcy Administrator districts were not required to pay quarterly fees. In 1994, however, the Ninth Circuit ruled this distinction unconstitutional, explaining that the statutory imposition of such quarterly fees in certain districts but not in others was without justification and thus contravened the Bankruptcy Clause of the Constitution. *See St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525, 1529, 1531-32 (9th Cir. 1994), *amended by* 46 F.3d 969 (9th Cir. 1995). In reaction to that decision, Congress empowered the Judicial Conference to fix and assess quarterly fees in the Bankruptcy

---

[2] The exclusion of Alabama and North Carolina from the Trustee program was intended to be temporary. More than twenty years later, however, Congress confirmed the special status of the six judicial districts in those two states as Bankruptcy Administrator districts. *See* Federal Courts Improvement Act of 2000, Pub. L. No. 106-518 § 501, 114 Stat. 2410, 2421-22 (2000).

Administrator districts that were "equal to those imposed" in the Trustee districts. *See* 28 U.S.C. § 1930(a)(7) ("In districts that are not part of a United States trustee region . . . , the Judicial Conference may require the debtor in a case under chapter 11 of title 11 to pay fees equal to those imposed by paragraph (6) of this subsection.").[3]  In 2002, the Judicial Conference began to impose quarterly fees in the Administrator districts that were consistent with the fees specified for the Trustee districts.  The Administrator districts' quarterly fees are then deposited into a fund that offsets the general judicial branch appropriations rather than Trustee operations. *Id.*  Until January 1, 2018, all Chapter 11 debtors, regardless of district, paid quarterly fees consistent with the same disbursement formula.  At that point in time, a funding deficit in the Trustee program disrupted the status quo.

For several decades, Congress's annual appropriations to the Trustee program were entirely offset by the quarterly fees.  The mid-2010s witnessed a decline in bankruptcy filings, however, and the Trustee program was no longer self-sustaining.  Fueled by concerns that the financial burden might shift to taxpayers, Congress enacted the 2017 Amendment.[4]  That Amendment altered the quarterly fees formula and increased the fees

---

[3] As discussed further in footnote 10, in January 2021 — after this appeal was argued — Congress amended § 1930(a)(7) of Title 28, replacing the word "may" with the word "shall." *See infra* note 10.

[4] The 2017 Amendment provision at issue in these appeals is codified in § 1930(a)(6)(B) of Title 28 and provides in pertinent part as follows:

(Continued)

7

due in large Chapter 11 bankruptcy cases, on a temporary basis, during fiscal years 2018 through 2022. This fee increase is conditional, and it is only applicable if the Trustee Fund contains a balance of less than $200 million as of September 30 of the most recent fiscal year. The quarterly fee increase only applies to those bankruptcy debtors with disbursements of $1,000,000 or more in any quarter. If those criteria are satisfied, the quarterly fee is then the lesser of 1 percent of such disbursements, or $250,000. This potential fee is a substantial increase from the previous maximum fee of $30,000.

Initially, only those bankruptcy debtors in the Trustee districts incurred fee increases as a result of the 2017 Amendment. Several Trustee district bankruptcy courts applied the increased fees to quarterly disbursements that postdated the Amendment. As a result, large Chapter 11 debtors with bankruptcy cases pending on January 1, 2018, incurred increased fees for disbursements beginning in the first quarter of 2018. The bankruptcy debtors in the Administrator districts, however, were not subjected to increased quarterly fees. The Judicial Conference adopted an amended fee schedule in September 2018 and applied the increased fees to those bankruptcy cases filed in the six Bankruptcy Administrator districts

---

During each of fiscal years 2018 through 2022, if the balance in the United States Trustee System Fund as of September 30 of the most recent full fiscal year is less than $200,000,000, the quarterly fee payable for a quarter in which disbursements equal or exceed $1,000,000 shall be the lesser of 1 percent of such disbursements or $250,000.

See 28 U.S.C. § 1930(a)(6)(B). Congress specified that the 2017 Amendment "shall apply to quarterly fees payable under section 1930(a)(6) . . . for disbursements made in any calendar quarter that begins on or after the date of enactment." See Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72, § 1004, 131 Stat. 1224, 1232 (2017).

on or after October 1, 2018. Consequently, any debtor in an Administrator district that filed for bankruptcy prior to October 1, 2018, does not owe increased quarterly fees, regardless of how long the bankruptcy case remains pending.

## B.

### 1.

Circuit City Stores, Inc., and its affiliates (collectively "Circuit City") operated a chain of consumer electronic retail stores throughout the United States. In 2008, Circuit City filed for Chapter 11 bankruptcy protection in the Eastern District of Virginia, which is a Trustee district. In 2010, the bankruptcy court in eastern Virginia confirmed Circuit City's Chapter 11 liquidation plan. That plan provides, with respect to "fees that become due and payable" under 28 U.S.C. § 1930, that the Circuit City Trustee "shall pay [those] fees to the U.S. Trustee until the Chapter 11 Cases are closed or converted and/or the entry of the final decrees." *See* J.A. 110.[5] Circuit City's bankruptcy proceedings remained pending on January 2018, after the 2017 Amendment went into effect.

The Circuit City Trustee initially paid the increased quarterly fees. His willingness to pay those fees diminished, however, when the bankruptcy court in the Western District of Texas ruled in February 2019 that the 2017 Amendment is unconstitutional because it creates nonuniform bankruptcy laws in contravention of the Bankruptcy Clause, and also because it is unconstitutionally retroactive. *See In re Buffets, LLC*, 597 B.R. 588 (Bankr.

---

[5] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

W.D. Tex. 2019).[6] On March 28, 2019, the Circuit City Trustee filed for similar relief in the Eastern District of Virginia, seeking to limit his liability for quarterly fees assessed under 28 U.S.C. § 1930(a)(6). *See generally* J.A. 348-63. The Circuit City Trustee maintained that he was excused from complying with the revised quarterly fee schedule for the reasons adopted by the *Buffets* bankruptcy court decision in Texas — that is, the 2017 Amendment impermissibly created nonuniform bankruptcy laws that are unconstitutionally retroactive.[7] The U.S. Trustee opposed Circuit City's requests, maintaining that Congress's temporary, prospective increase in quarterly fees for a subset of Chapter 11 cases is not retroactive and does not implicate any constitutional uniformity issues.

2.

a.

By its Bankruptcy Opinion of July 15, 2019, the bankruptcy court in eastern Virginia granted Circuit City's request for relief. The court ruled that the quarterly fees imposed could be classified either as a tax or as a user fee under the Bankruptcy Code and, under either designation, the 2017 Amendment contravenes both the Bankruptcy Clause and the

---

[6] As explained more fully below, in November 2020, the Fifth Circuit reversed the February 2019 *Buffets* decision of the bankruptcy court. *See Matter of Buffets, L.L.C.*, 979 F.3d 366 (5th Cir. 2020).

[7] In explaining his retroactivity contention, the Circuit City Trustee asserts, *inter alia*, that the 2017 Amendment's application to pending cases contravenes the Due Process Clause of the Fifth Amendment, in that it deprived bankruptcy debtors of fair notice.

Uniformity Clause of the Constitution. *See* Bankruptcy Opinion 14.[8] If the quarterly fees are a tax, according to the Opinion, the 2017 Amendment contravenes the Uniformity Clause because such fees are not applied in a geographically uniform manner. *Id.* Alternatively, if the quarterly fees are Chapter 11 user fees, the Opinion ruled that the 2017 Amendment is yet unconstitutional because it violates the Bankruptcy Clause, which empowers Congress to establish uniform laws for bankruptcy in the United States. *Id.* For support, the Opinion relied on the fact that, for the first three quarters of 2018, the Judicial Conference did not increase quarterly fees in the Bankruptcy Administrator districts. *Id.* at 12. As the Opinion explained, the Bankruptcy Administrator districts imposed the amended quarterly fee schedule for bankruptcy cases filed after on or October 1, 2018. With these underpinnings, the Opinion ruled that the quarterly fees owed by the Circuit City Trustee under the 2017 Amendment "since January 1, 2018, [are unconstitutional and] must be determined based on the prior version of the statute." *Id.* at 14.

b.

The Bankruptcy Opinion also addressed Circuit City's retroactivity contention. As the Opinion explained, Congress had not explicitly defined the 2017 Amendment's temporal reach. *See* Bankruptcy Opinion 10. It was thus for the courts to decide whether

---

[8] The Bankruptcy Clause of the Constitution provides, in pertinent part, that Congress may "establish . . . uniform Laws on the subject of Bankruptcies throughout the United States." *See* U.S. Const. art. I, § 8, cl. 4. The Uniformity Clause, on the other hand, relates only to taxation and empowers Congress to "lay and collect [t]axes . . . ; but all Duties, Imposts, and Excises shall be uniform throughout the United States." *See id.* at cl. 1.

11

the 2017 Amendment applied to bankruptcy cases pending when the Amendment became effective. The Opinion then ruled that the increased quarterly fees in Trustee districts do not contravene any anti-retroactivity principles of the Constitution because, despite the variance in expectations, the 2017 Amendment is "substantively prospective" rather than retroactive. *Id.* at 11 (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 n.24 (1994) ("Even uncontroversially prospective statutes may unsettle expectations and impose burdens on past conduct:  a new property tax or zoning regulation may upset the reasonable expectations that prompted those affected to acquire property.")).

c.

In August 2019, the U.S. Trustee appealed to the district court, challenging the Bankruptcy Opinion's ruling that the 2017 Amendment is unconstitutional due to a lack of uniformity.  The Circuit City Trustee then cross-appealed the Opinion's ruling on retroactivity.  The parties jointly sought permission for direct appeals, bypassing the district court and urging that the constitutional issues relating to the 2017 Amendment present questions of law "as to which there [are] no controlling decision[s] of [this Court] or of the Supreme Court" and involve matters of "public importance."  *See* J.A. 413-16 (citing 28 U.S.C. § 158(d)(2)(A)(i) (authorizing certification to court of appeals by "all the appellants and appellees . . . acting jointly")).  By Order of November 6, 2019, we granted the joint petition for these appeals, and we possess jurisdiction pursuant to that Order.

12

## II.

We generally review a bankruptcy court's factual findings for clear error and its legal rulings de novo. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017). Because the relevant facts underlying these appeals are undisputed, the applicable standard of review is de novo.

## III.

In his appeal, the U.S. Trustee maintains that the 2017 Amendment is constitutional and lawful in all respects. He thus challenges the Bankruptcy Opinion's ruling that the 2017 Amendment is unconstitutionally nonuniform and contravenes the Bankruptcy Clause and the Uniformity Clause. The Circuit City Trustee, on the other hand, maintains that the bankruptcy court ruled correctly on the uniformity issue being challenged by the U.S. Trustee. The Circuit City Trustee urges in his cross-appeal, however, that the 2017 Amendment's increased fee schedule constitutes an unconstitutional retroactive imposition of quarterly fees. We will assess these appeals in turn.

## A.

The U.S. Trustee maintains that the bankruptcy court in eastern Virginia erroneously ruled that that 2017 Amendment's fee increase is unconstitutional. In making that ruling, the Bankruptcy Opinion relied on both the Bankruptcy Clause and the Uniformity Clause. With respect to his Uniformity Clause challenge, the U.S. Trustee finds support in the Fifth Circuit's ruling last year — reversing the decision of the Texas bankruptcy court relied on in the Bankruptcy Opinion — that Chapter 11 quarterly fees are user fees. *See Matter of*

13

*Buffets, L.L.C.*, 979 F.3d 366, 376 n.7 (5th Cir. 2020). Put succinctly, because the Uniformity Clause only applies to taxes, as the U.S. Trustee maintains and as the Fifth Circuit correctly ruled, that Clause is inapplicable here. *Id.* (citing U.S. Const. art. I, § 8, cl. 1 ("Congress may 'lay and collect [t]axes . . . ; but all Duties, Imposts, and Excises shall be uniform throughout the United States.'")).

Because the Bankruptcy Opinion incorrectly relied on the Uniformity Clause, the uniformity ruling is left with only one other basis — that the 2017 Amendment violates the Bankruptcy Clause. The Bankruptcy Clause relates to the uniformity issue because Congress is empowered therein to establish uniform bankruptcy laws throughout the United States. The Bankruptcy Opinion, relying on that Clause and the Uniformity Clause, and drawing support from the now reversed decision of the Texas bankruptcy court, ruled that the 2017 Amendment is constitutionally flawed.

The U.S. Trustee contends that the quarterly fees being challenged here fail to implicate either the Uniformity Clause or the Bankruptcy Clause, because the 2017 Amendment is not a substantive bankruptcy law. Accordingly, he maintains that the 2017 Amendment is not subject to either of the uniformity requirements. Of importance, the Fifth Circuit has reversed the Texas bankruptcy court decision on which the Bankruptcy Opinion relied, stating that "every bankruptcy court dealing with a challenge to the 2017 Amendment" has rejected the contention that the Amendment is not a law "on the subject of Bankruptcies." *See Buffets*, 979 F.3d at 377. We are persuaded to the Fifth Circuit's view, in that — as explained further below — there is no constitutional uniformity problem posed by the 2017 Amendment.

14

To be constitutionally uniform, "[a] law enacted pursuant to the Bankruptcy Clause must: (1) apply uniformly to a defined class of debtors; and (2) be geographically uniform." *See In re SCI Direct, LLC*, No. 17-61735, 2020 WL 5929612, at *10 (Bankr. N.D. Ohio Sept. 22, 2020) (citing *Ry. Labor Execs.' Ass'n v. Gibbons*, 455 U.S. 457, 473 (1982)). The Bankruptcy Clause, however, "is not a straitjacket that forbids Congress to distinguish among classes of debtors." *See Gibbons*, 455 U.S. at 469. In fact, as the Supreme Court has emphasized, "[a] bankruptcy law may be uniform and yet may recognize the laws of the State in certain particulars, although such recognition may lead to different results in different States." *Id.* (internal quotation marks omitted). In the proper circumstances, Congress may "take into account differences that exist between different parts of the country, and . . . fashion legislation to resolve geographically isolated problems." *Id.*; *see also Reg'l R.R. Reorganization Cases*, 419 U.S. 102, 159-61 (1974) (recognizing that Act of Congress applicable only to rail carriers in certain regions and to carriers reorganizing within certain time period was uniform under the Bankruptcy Clause, in that it was designed to solve specific regional problem).

Several bankruptcy courts have recently addressed similar constitutional challenges to the 2017 Amendment, and most of those courts have ruled that the Amendment does not present a constitutional uniformity problem.[9] As explained below, the Fifth Circuit's

---

[9] At least ten bankruptcy courts have addressed the uniformity question that we assess today, and six of those courts have ruled in favor of constitutionality. *See In re John Q. Hammons Fall 2006, LLC*, 618 B.R. 519, 524-26 (Bankr. D. Kan. 2020) (reviewing uniformity question that we assess with respect to 2017 Amendment and ruling — as we (Continued)

15

*Buffets* decision correctly resolved the uniformity issue concerning the 2017 Amendment's quarterly fee increase and its application to debtors in the Trustee and Administrator districts. *See Buffets*, 979 F.3d 366.

The *Buffets* debtors filed their bankruptcy proceedings in the Western District of Texas in 2016. Those proceedings were pending in 2018 when the increased quarterly fees required by the 2017 Amendment went into effect. After the *Buffets* debtors declined to pay the increased fees and challenged the constitutionality of the 2017 Amendment on uniformity grounds, the bankruptcy court agreed with the debtors and ruled that the Amendment was not uniform and thus unconstitutional. The U.S. Trustee in Texas appealed, and — as in these appeals — the uniformity issue was certified to the court of appeals.

_____

do today — in favor of constitutionality); *In re MF Glob. Holdings Ltd.*, 615 B.R. 415, 446-48 (Bankr. S.D.N.Y. 2020) (same); *Point.360 v. Office of the U.S. Trustee*, No. 2:19-ap-01442 (Bankr. C.D. Cal. Mar. 31, 2021) (same); *In re Mosaic Mgmt. Grp., Inc.*, 614 B.R. 615, 623-25 (Bankr. S.D. Fla. 2020) (same); *In re Clayton Gen., Inc.*, No. 15-64266, 2020 Bankr. LEXIS 842, at *27 (Bankr. N.D. Ga. Mar. 30, 2020) (same); *In re Exide Techs.*, 611 B.R. 21, 36-38 (Bankr. D. Del. 2020) (same).

On the other hand, four bankruptcy courts have addressed the same uniformity question that we assess and ruled — as did the Bankruptcy Court in eastern Virginia — that the challenged 2017 Amendment is unconstitutional. *See In re Circuit City Stores, Inc.*, 606 B.R. 260, 269-70 (Bankr. E.D. Va. 2019) (addressing uniformity question and ruling that challenged 2017 Amendment is unconstitutional); *In re Life Partners Holdings, Inc.*, 606 B.R. 277, 286-88 (Bankr. N.D. Tex. 2019) (same); *In re Buffets, LLC*, 597 B.R. 588, 594-95 (Bankr. W.D. Tex. 2019) (same), *rev'd*, 979 F.3d 366 (5th Cir. 2020); *USA Sales, Inc. v. Office of the U.S. Trustee*, 2021 WL 1226369, at *17-18 (C.D. Cal. Apr. 1, 2021) (same).

16

After concluding that the uniformity requirement of the Bankruptcy Clause is likely applicable to the 2017 Amendment, the Fifth Circuit decided that there is "no uniformity problem" with the Amendment. *See Buffets*, 979 F.3d at 377. That decision was made after a careful assessment of the applicable authorities, and the court of appeals recognized that "the uniformity requirement forbids only arbitrary regional differences in the provisions of the Bankruptcy Code." *Id.* at 378 (internal quotation marks omitted). As the court explained, however, the uniformity requirement does not deny Congress the power to enact legislation that resolves regionally isolated problems. *Id.* According to the Fifth Circuit, when Congress determined that it needed to remedy a shortfall in funding for the Trustee districts, it was entitled to "solve the evil to be remedied with a fee increase in just the underfunded districts." *Id.* (internal quotation marks omitted). Thus, the court of appeals explained, "[i]t is reasonable for Congress to have those who benefit from the Trustee program fill the hole in its finances." *Id.* at 380.

As emphasized by the Fifth Circuit, the Bankruptcy Clause forbids only "arbitrary" geographic differences. And the Supreme Court has never held that a statute contravened the Bankruptcy Clause because of arbitrary geographic distinctions. For example, in the railroad setting, the Court allowed Congress to establish a special court and enact statutes to benefit bankrupt rail carriers in the northeast and midwest, as those were the only railroads facing the problem. *See Reg'l R.R. Reorganization Cases*, 419 U.S. at 159-61.

Just as it had successfully addressed the failure of certain railroads, Congress was confronted here with a U.S. Trustee problem. The 2017 Amendment drew a program-specific distinction that only indirectly has a geographic impact. *See Buffets*, 979

17

F.3d at 378. Although the Amendment may render it more expensive for some debtors in Virginia — as opposed to North Carolina or Alabama — to go through Chapter 11 proceedings, the 2017 Amendment does not draw an arbitrary distinction based on the residence of the debtors or creditors. Instead, the distinction is simply a byproduct of Virginia's use of the Trustee program. By increasing quarterly fees for large Chapter 11 bankruptcies in Trustee districts, Congress solved the shortfall in the program's funding. The Administrator districts, which are funded by the judiciary's general budget, did not face a similar financial issue. Because only those debtors in Trustee districts use the U.S. Trustees, Congress reasonably solved the shortfall problem with fee increases in the underfunded districts. *Id.*

As recognized by the Fifth Circuit, the Ninth Circuit had observed in 1995 that the establishment of separate Trustee and Administrator districts was an "irrational and arbitrary" distinction for which Congress had given "no justification." *See St. Angelo*, 38 F.3d at 1532. The 2017 Amendment, however, does not suffer from any such shortcoming. Congress has provided a solid fiscal justification for its challenged action: to ensure that the U.S. Trustee program is sufficiently funded by its debtors rather than by the taxpayers. Because the 2017 Amendment does not contravene the uniformity mandate of either the Uniformity Clause or the Bankruptcy Clause, we are constrained to reverse the bankruptcy court and resolve appeal No. 19-2240 in favor of the U.S. Trustee.[10]

---

[10] The U.S. Trustee also contends on appeal that the combined application of § 1930(a)(6)(B) and 1930(a)(7) of Title 28 ensure that any quarterly fee increases would (Continued)

18

B.

Turning to the cross-appeal pursued by the Circuit City Trustee, we must decide whether the 2017 Amendment impermissibly applies to bankruptcy cases that were pending when the Amendment took effect. As explained heretofore, the bankruptcy court in Virginia characterized the 2017 Amendment as substantively prospective, and thus not in violation of any anti-retroactivity constitutional principles. On appeal, the Circuit City Trustee contends that, regardless of the statutory language, applying the new quarterly fees to pending bankruptcy cases is unconstitutionally retroactive. The Circuit City Trustee thus contends that the "exponential statutory increase" in quarterly fees could not have been anticipated when Circuit City's bankruptcy reorganization plan was confirmed. *See* Br. of Appellee 6.

---

apply equally to all judicial districts. *See* Br. of Appellant 29-32. As such, the Trustee maintains, any discrepancy in impact would be merely a byproduct of implementation efforts, rather than unlawful congressional action. *Id.* Of possible relevance to this proposition, Congress amended § 1930(a)(7) of Title 28 and replaced the word "may" with the word "shall." Subsection (a)(7) now reads: "In districts that are not part of a United States trustee region . . . the Judicial Conference of the United States shall require the debtor in a case under chapter 11 of title 11 to pay fees equal to those imposed by paragraph (6) of this subsection."

The U.S. Trustee promptly submitted to our panel a post-argument Local Rule 28(j) letter, pointing out this amendment but positing that it is merely a clarifying amendment that further confirms that Congress never gave the Judicial Conference discretion to charge unequal fees. The Liquidating Trustee failed to respond to the U.S. Trustee's Rule 28(j) letter and has not contested the proposition it espouses. Because we rule that the 2017 Amendment is constitutional, we need not further address this additional argument of the U.S. Trustee.

19

Applying a statute to events occurring before it was enacted gives rise to Fifth Amendment due process concerns. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994). Indeed, such a retroactive application may deprive a party of adequate notice and undermine "settled expectations." *Id.* at 265. In assessing the retroactive impact of legislation, the courts have utilized a two-step analysis. *Id.* at 280. First, applying ordinary tools of statutory construction, we ask whether Congress "has expressly prescribed the statute's proper reach." *Id.*; *see also Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006). And, if Congress did so, "this is the end of the analysis." *See Appiah v. INS*, 202 F.3d 704, 708 (4th Cir. 2000). Only if that effort fails do the courts proceed to the second step. At step two, a reviewing court must determine whether applying the new provision results in an impermissible retroactive consequence by "affecting substantive rights, liabilities, or duties on the basis of conduct arising before its enactment." *See Fernandez-Vargas*, 548 U.S. at 37 (quoting *Landgraf*, 511 U.S. at 278). The question for the cross-appeal is thus whether the 2017 Amendment, by its terms, applies to bankruptcy cases that were pending prior to January 1, 2018. If Congress was not clear, we must then decide whether an application of the Amendment to those pending bankruptcy cases will lead to impermissibly retroactive consequences.

As the text of the 2017 Amendment indicates, Congress intended for the increased quarterly fees to apply to all Chapter 11 cases. The bankruptcy fees provision mandates that quarterly fees be paid "in each case" and "for each quarter . . . until the case is converted or dismissed," without limitation based on when the case was filed. *See* 28 U.S.C. § 1930(a)(6)(A). In the 2017 Amendment, Congress directed that "[t]he

20

amendments made by this section" — i.e., the increase in quarterly fees for the larger Chapter 11 cases — "shall apply to quarterly fees payable under section 1930(a)(6) . . . for disbursements made in any calendar quarter that begins on or after the date of enactment." *See* Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72, § 1004, 131 Stat. 1224, 1232 (2017). The Amendment thus makes clear that Congress intended for the increase to apply to all Chapter 11 quarterly fees due in January 2018 or thereafter, without regard to the case's filing date.

Notwithstanding the statutory provision, the Circuit City Trustee contends that Congress never intended for the 2017 Amendment to apply to bankruptcy cases that were pending prior to January 1, 2018. The Circuit City Trustee relies on a 1996 amendment of the same statute and argues that Congress was "crystal clear" in 1996 that the amendment was intended to apply to current cases. *See* Br. of Appellee 22-23. That contention reflects a critical misunderstanding of the 1996 amendment. It was only after several courts reached divergent conclusions about whether Congress intended for the 1996 amendment to apply to ongoing bankruptcy cases that Congress enacted "clarifying legislation," making it explicit that pending cases were covered. *Cf. Brown v. Thompson*, 374 F.3d 253, 259 & n.2 (4th Cir. 2004). Unlike the 1996 amendment, the 2017 Amendment plainly applies to all disbursements made after its effective date.

Even if its terms were somehow ambiguous, however, the 2017 Amendment would have no "retroactive effect" because — consistent with Supreme Court precedent — it does not "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."

21

*See Landgraf*, 511 U.S. at 280. Although there is a presumption against the retroactive application of statutes, that presumption only applies if there is a possibility that a statute "attaches new legal consequences to events completed before its enactment." *Id.* at 270. The 2017 Amendment plainly applies only to *future* disbursements, which are triggered by a debtor's conduct occurring after the law's effective date. *See F.D.I.C. v. Faulkner*, 991 F.2d 262, 266 (1993) ("A statute's application is usually deemed prospective when it implicates conduct occurring on or after the statute's effective date." (citations omitted)).

Of importance here, the Fifth Circuit's *Buffets* decision correctly resolved the retroactivity challenge to the 2017 Amendment. *See* 979 F.3d at 374-76. The court of appeals applied the Amendment only to disbursements made after its effective date. *Id.* at 374. After evaluating the congressional history for applying fee increases to disbursements made after an effective date, the court concluded that Congress had always made fee increases so applicable. *Id.* Its decision compared the increased quarterly fees to property taxes that increase after the purchase of a home. And the Fifth Circuit ruled that the challenged fee increase is not impermissibly retroactive because it does not impair rights that debtors possessed when they filed for bankruptcy protection, nor does it increase liability for conduct that had already occurred. *Id.* at 375-76. Instead, this quarterly fee increase merely upsets debtors' "expectations as to amounts owed based on future distributions." *Id.* at 375.

In these circumstances, Congress clearly intended for the 2017 Amendment to apply to all disbursements made after its effective date, and it intended for the Amendment to be prospective. It does not increase a debtor's "liability for past conduct, or impose new duties

22

with respect to transactions already completed." *See Landgraf*, 511 U.S. at 280. Although the Circuit City Trustee correctly posits that the Amendment increases the quarterly fees that large Chapter 11 debtors will pay, such debtors were reasonably expected to pay fees pursuant to some formula. Accordingly, we are also constrained to reject the Circuit City Trustee's challenge to the Bankruptcy Opinion's retroactivity ruling and resolve appeal No. 19-2255 in favor of the U.S. Trustee.

IV.

Pursuant to the foregoing, we resolve appeal No. 19-2240 by reversing the bankruptcy court's ruling that the 2017 Amendment is unconstitutionally nonuniform. In appeal No. 19-2255, we affirm the bankruptcy court's decision that the 2017 Amendment is not unconstitutionally retroactive. Finally, we remand for such other and further proceedings as may be appropriate.

*AFFIRMED IN PART, REVERSED IN PART,*
*AND REMANDED*

QUATTLEBAUM, Circuit Judge, concurring in part and dissenting in part:

Make no mistake about it. We have two types of bankruptcy courts in the United States. Forty-eight states operate as part of the United States Trustee Program under which Unites States Trustees aid the courts in the administration and management of bankruptcy cases. But two states—Alabama and North Carolina—operate under a different system. They use Bankruptcy Administrators rather than United States Trustees. And the differences extend beyond titles. Some Chapter 11 debtors in districts that employ the United States Trustees pay materially more in quarterly fees than similarly situated debtors in districts that employ Bankruptcy Administrators. Those fee differences, in turn, trickle down and reduce the amounts unsecured creditors receive. Therefore, many unsecured creditors in the forty-eight states operating under the United States Trustee Program are receiving less of the amounts owed to them than similarly situated unsecured creditors in Alabama and North Carolina.

The Constitution prohibits this lack of uniformity. Article I, Section 8, Clause 4 of the Constitution, known as the Bankruptcy Clause, grants Congress the power to establish "uniform Laws on the subject of Bankruptcies throughout the United States." Because I believe a faithful application of the Constitution's Bankruptcy Clause renders the statutory scheme permitting these different quarterly fees unconstitutional, I respectfully dissent from the portion of Section III-A of the majority's opinion that finds to the contrary. I concur as to the remainder of the majority's well-reasoned opinion.

## I.

To understand how we arrived at the point where we have two types of bankruptcy courts, I begin with some background. "Before 1978, bankruptcy judges were responsible for the administration of individual bankruptcy cases, including such tasks as appointing trustees to cases and monitoring individual cases." U.S. Gov't Accountability Off., GAO-GGD-92-133, Bankruptcy Administration: Justification Lacking for Continuing Two Parallel Programs 3 (1992) [hereinafter GAO Report]. "This responsibility placed administrative, supervisory, and clerical functions on judges in addition to their judicial duties." *Id.* at 3–4.

In an attempt to lessen these functions, in 1978, Congress "launched a trustee pilot program within the Department of Justice." *Matter of Buffets, L.L.C.*, 979 F.3d 366, 370 (5th Cir. 2020) (citing Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549, 2662–65 (1978)). The program successfully reduced the administrative duties of bankruptcy judges and increased oversight of the bankruptcy system. Thus, in 1986, Congress permanently created the United States Trustee Program. The Trustee Program is overseen by the Department of Justice's Executive Office for United States Trustees ("EOUST"), which "provide[s] legal, administrative, and management support to the individual [United States Trustee] districts." GAO Report at 4.

But the Trustee Program only operates in forty-eight states, as "[t]he six districts in Alabama and North Carolina fall under the Bankruptcy Administrator program, which the Judicial Conference oversees." *Buffets*, 979 F.3d at 370. Bankruptcy Administrator districts do not benefit from "[t]he centralized support and oversight that the EOUST and its

25

regional offices provide . . . ." GAO Report at 4. Instead, "[e]ach of the six [Bankruptcy Administrator] districts is independent, operating as a separate entity." *Id.* The Bankruptcy Administrator program "in each district is headed by a Bankruptcy Administrator who is selected by the U.S. Court of Appeals for a term of 5 years." *Id.* at 4–5. "It was originally thought that the exclusion of Alabama and North Carolina would last only a few years, but a later law enshrined their special status." *Buffets*, 979 F.3d at 370 n.1 (citing Federal Courts Improvement Act of 2000, Pub. L. No. 106-518, § 501, 114 Stat. 2410, 2421–22 (2000)). As the Acting United States Trustee ("U.S. Trustee") conceded at oral argument, Alabama and North Carolina's refusal to participate in the Trustee Program is not based on any unique attributes of those states. They simply prefer to use Bankruptcy Administrators rather than Trustees. The two systems are, therefore, candidly and unapologetically non-uniform. And the quarterly fees that Chapter 11 debtors pay in the Trustee Program and the Bankruptcy Administrator system are also non-uniform.

The way in which the two systems impose quarterly fees relates to the ways the two systems are funded. The Trustee Program is funded primarily by fees from debtors. *Id.* at 371. Debtors in Chapter 11 cases pay fees based on quarterly "disbursements" that are made until their cases are "converted or dismissed."[1] 28 U.S.C. § 1930(a)(6). Initially, Chapter 11 debtors in Bankruptcy Administrator districts were not required to pay these

---

[1] Logistically, the Trustee Program is funded by congressional appropriations; however, the appropriation is offset by fees paid into the United States Trustee System Fund. *See* 28 U.S.C. § 589a(b) (directing that various fees should be deposited into the United States Trustee System Fund to offset the congressional appropriation).

substantial quarterly fees. *Buffets*, 979 F.3d at 371. Instead, the Bankruptcy Administrator system was funded by the judiciary's general budget. *Id.* at 371. That meant that, in Bankruptcy Administrator districts, funding from United States taxpayers was not offset by Chapter 11 quarterly fees. *See id.*

In 1994, the United States Court of Appeals for the Ninth Circuit, facing arguments much like those presented to us, ruled that the lack of quarterly fees in Bankruptcy Administrator districts violated the United States Constitution's Bankruptcy Clause, which "empowers Congress to enact 'uniform Laws on the subject of Bankruptcies throughout the United States.'" *See St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525, 1529 (9th Cir. 1994) (quoting U.S. Const. art. I, § 8, cl. 4). The Court noted that "bankruptcy law[s] may have different effects in various states due to dissimilarities in state law as long as the federal law itself treats creditors and debtors alike." *Id.* at 1531. Because Chapter 11 debtors were only required to pay quarterly fees in districts participating in the Trustee Program, unsecured creditors in those districts received less money from debtors than they would have if the cases were filed in Alabama or North Carolina. *See id.* at 1531–32. Absent a justification for treating these debtors and creditors differently based solely on their geographic location, the Court ruled that the quarterly fee statute did "not apply uniformly to a defined class of debtors." *Id.* at 1532.

After the *St. Angelo* decision, Congress enacted 28 U.S.C. § 1930(a)(7) which empowered "the Judicial Conference to set fees in [Bankruptcy] Administrator districts that were 'equal to those imposed' in Trustee districts." *Buffets*, 979 F.3d at 371. Critically, however, the amended quarterly fee statute was permissive as to Bankruptcy Administrator

27

districts. It did not *require* equivalent fees. It merely allowed them. *See* 28 U.S.C. § 1930(a)(7) (2018) ("In districts that are not part of a United States trustee region . . . the Judicial Conference of the United States *may require* the debtor in a [Chapter 11 case] to pay fees equal to those imposed [in Trustee Program districts] . . . ." (emphasis added)).[2] If the Judicial Conference elected to impose quarterly fees, those funds were required to be deposited into a fund to offset appropriations from the federal judiciary's general budget. *See Buffets*, 979 F.3d at 371 (citing 28 U.S.C. § 1931).

"The Judicial Conference soon exercised the authority Congress gave it, charging quarterly fees in Administrator districts in the amounts specified in 28 U.S.C. § 1930 . . . ." *Id*. (internal quotation marks omitted). This seemingly—at least in practice—eliminated the specific uniformity problem. That changed a few years ago, however, when bankruptcy filings declined and revenue from quarterly fees decreased. *Id.* With reduced fees, the Trustee Program was unable to make ends meet. *Id.* Thus, in response to its budgetary shortfall, Congress amended 28 U.S.C. § 1930(a)(6) to increase the quarterly fees in Chapter 11 cases. *Id.* Specifically, beginning January 1, 2018, Congress temporarily increased the quarterly fees for the largest Chapter 11 debtors, requiring debtors with quarterly disbursements "equal or exceed[ing] $1,000,000" to pay "the lesser of 1 percent of such disbursements or $250,000." 28 U.S.C. § 1930(a)(6)(B) (2018). This increase in

---

[2] As noted below, Congress recently amended the language of 28 U.S.C. § 1930(a)(7) to require Bankruptcy Administrator districts to impose equivalent fees. Therefore, because this case involves a challenge to the imposition of quarterly fees prior to the recent amendment, all citations to § 1930(a)(7) refer to the version of the statute in effect prior to the amendment unless otherwise specified.

quarterly fees applies "[d]uring each of fiscal years 2018 through 2022, if the balance in the United States Trustee System Fund as of September 30 of the most recent full fiscal year is less than $200,000,000 . . . ." *Id.*

Important here, "[m]any courts in Trustee districts applied the new fees to any quarterly disbursements that postdated the effective date of the 2017 Amendment, even if the bankruptcy case had been pending before the fee increase." *Buffets*, 979 F.3d at 372. This was a dramatic increase for large debtors. Prior to the amendment, debtors whose quarterly disbursements exceeded $30,000,000 were required to pay a $30,000 fee. 28 U.S.C. § 1930(a)(6) (2012). After the amendment, however, those debtors were required to pay a $250,000 fee—an increase of more than 800%. *See* 28 U.S.C. § 1930(a)(6)(B) (2018).

The Bankruptcy Administrator districts did not immediately follow suit and increase their fees. *Buffets*, 979 F.3d at 372. "The Judicial Conference waited until September 2018 to adopt the increased fee schedule." *Id.* But the nine-month delay was not the only difference under the two systems. In Bankruptcy Administrator districts, the significantly increased quarterly fees applied only in cases "filed on or after October 1, 2018." *Id.* (internal quotation marks omitted). This led to vastly disparate fees paid by similarly situated debtors in different districts.

## II.

With that background in mind, I turn now to the facts here. In 2008, Circuit City Stores, Inc. and its affiliates ("Circuit City") filed for Chapter 11 bankruptcy protection in

29

the Eastern District of Virginia, which participates in the United States Trustee Program. In September 2010, the bankruptcy court confirmed Circuit City's proposed liquidation plan (the "Liquidating Plan"). "The Liquidating Plan provided for the formation of the Liquidating Trust, overseen by the Liquidating Trustee, to collect, administer, distribute, and liquidate all of [Circuit City's] remaining assets." J.A. 365 (footnote omitted). The Liquidating Plan further required the Liquidating Trustee to "pay quarterly fees to the U.S. Trustee until the Chapter 11 Cases are closed or converted and/or the entry of final decrees." J.A. 110.

Circuit City's bankruptcy cases were pending as of January 1, 2018, when the increased quarterly fee schedule took effect. It was, therefore, required to pay the increased fees. And the increased fees were far from nominal. "In the seven years between entry of the order confirming the Liquidating Plan and the effective date of section 1930(a)(6)(B), the Liquidating Trust paid approximately $833,000 in quarterly fees." J.A. 371 (footnote omitted). "In the first three quarters of 2018 alone, the Liquidating Trust paid approximately $632,000." J.A. 371. Without the increased quarterly fees, Circuit City would have paid $56,400—a difference of approximately $575,600.[3]

Recognizing the potential uniformity issues, the Liquidating Trustee moved to determine the extent of its liability for post-confirmation quarterly fees. The Liquidating

---

[3] The quarterly fee figures offered by the United States Trustee appear to differ from the amounts referenced by the Liquidating Trustee and the bankruptcy court. Regardless of the specific amount, it is undisputed that the Liquidating Trustee paid exponentially higher quarterly fees in 2018 than it would have in a Bankruptcy Administrator district.

Trust raised three arguments: (1) the amended quarterly fee statute was impermissibly applied to cases pending prior to its enactment; (2) the amended quarterly fee statute was non-uniform in violation of the Bankruptcy Clause of the United States Constitution; and (3) the amended quarterly fee statute was non-uniform in violation of the uniformity requirement in the Taxing and Spending Clause of the United States Constitution.[4] The bankruptcy court rejected the Liquidating Trustee's retroactivity argument. However, it found that § 1930(a)(6)(B) violated both the Bankruptcy Clause and the uniformity provision of the Taxing and Spending Clause. I agree with the majority's decision on retroactivity and the uniformity provision of the Taxing and Spending Clause. But I would affirm the bankruptcy court's holding that § 1930(a)(6)(B) violates the Bankruptcy Clause.

Simply put, the imposition of quarterly fees in the two bankruptcy systems is not uniform. Many Chapter 11 debtors in Trustee Program districts pay more than similarly situated debtors in Bankruptcy Administrator districts. As a consequence, similarly situated creditors receive less in Trustee Program districts than in Bankruptcy Administrator districts. How then does the U.S. Trustee justify this obvious lack of uniformity? He offers three reasons that I address in turn.

---

[4] "The Congress shall have Power To lay and collect Taxes, Duties, Imposts, and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States." U.S. Const. art. I, § 8, cl. 1.

## A.

First, the U.S. Trustee argues that the Constitution's uniformity requirement only applies to substantive bankruptcy laws. To illustrate his point, the U.S. Trustee refers to 28 U.S.C. § 158(b)(1), which authorizes each circuit court to determine whether to establish a bankruptcy appellate panel, as a non-substantive bankruptcy law that is not uniformly implemented. Moreover, the U.S. Trustee argues that important aspects of bankruptcy practice—such as prescribing fees that an attorney or private trustee may charge and the waiver of certain fees for debtors or creditors—vary at the district level. He contends that those provisions are not substantive and, as a result, do not violate Article I, Section 8, Clause 4 of the Constitution. And he then argues that § 1930(a)(6)(B) likewise is not a substantive bankruptcy law and, thus, not constitutionally infirm.

However, there are several problems with this argument. Initially, the U.S. Trustee offers no precedent in support of his substantive versus non-substantive distinction. In fact, as the Fifth Circuit recognized, every bankruptcy court that has addressed this argument has rejected it. *See Buffets*, 979 F.3d at 377. This is hardly surprising since the Supreme Court has "defined 'bankruptcy' as the 'subject of the relations between an insolvent or nonpaying or fraudulent debtor and his creditors, extending to his and their relief.'" *Ry. Labor Execs. Ass'n v. Gibbons*, 455 U.S. 457, 466 (1982) (quoting *Wright v. Union Central Life Ins. Co.*, 304 U.S. 502, 513–14 (1938)). The differences in § 1930(a)(6) and (a)(7) fit squarely within this definition.

What's more, there is a world of difference between the provisions cited by the U.S. Trustee and those at issue here. Of course, certain bankruptcy practices will vary at the

32

local level. Bankruptcy courts must have the flexibility to operate in the most appropriate and efficient manner possible given their locality and staffing. But unlike various local rules or the existence of bankruptcy appellate panels, the disparate application of § 1930(a)(6)(B) regularly leads to similarly situated debtors paying *more* in fees and *less* to creditors in Trustee Program districts than they would in Bankruptcy Administrator districts. The bankruptcy court below provided a succinct example: "Had the Debtors filed their chapter 11 bankruptcy petitions a mere 140 miles south in Raleigh, North Carolina, the Debtors would be paying substantially lower quarterly fees than they are paying now." J.A. 376 (footnote omitted). Certainly, statutes that alter the amounts similarly situated creditors receive based on geography are sufficiently substantive to implicate the Bankruptcy Clause.

## B.

The U.S. Trustee next argues that § 1930(a)(6)(B) is, in any event, uniform. He insists that § 1930(a)(7) "mandates that quarterly fees in bankruptcy-administrator districts be 'equal to those imposed by [section 1930(a)(6)].'" Appellant's Br. at 28 (quoting 28 § 1930(a)(7)). Not so. Section 1930(a)(7) states that, in Bankruptcy Administrator districts, "the Judicial Conference of the United States *may require* the debtor in a [Chapter 11 case] to pay fees equal to those imposed by [§ 1930(a)(6)]." 28 U.S.C. § 1930(a)(7) (2018) (emphasis added). If the operative version of § 1930(a)(7) used the word "shall" rather than "may," this would be an entirely different case.

Illustrating this point, on January 12, 2021, during the pendency of this appeal, President Donald J. Trump signed the Bankruptcy Administration Improvement Act of

33

2020, Pub. L. 116-325, 134 Stat. 5085 (2021). The Act fixed the uniformity problem by striking the word "may" from § 1930(a)(7) and inserting the word "shall." Pub. L. 116-325, 134 Stat. at 5088. The Act further noted that its purpose was to "confirm the longstanding intention of Congress that quarterly fee requirements remain consistent across all Federal judicial districts." *Id.* at 5086. The U.S. Trustee submitted a Rule 28(j) letter alerting the Court to this legislative change and arguing that the Act merely clarified, rather than changed § 1930(a)(7). I disagree. As is evident from the nine-month delay in implementing the increased quarterly fees, the unambiguous language of § 1930(a)(7) prior to the Act vested the Judicial Conference with discretion to assess increased quarterly fees. The Act constitutes a commendable congressional effort to remedy an unconstitutional statute. While that likely ameliorates the uniformity issue going forward, it does not eliminate the problem in the as-applied challenge before us.

That is so because the Act does not address the other critical difference between § 1930(a)(6) and (a)(7). Remember, in Bankruptcy Administrator districts, the increased quarterly fees only applied to cases filed after October 1, 2018. But in Trustee Program districts, the increased quarterly fees not only applied to disbursements in all cases filed after January 1, 2018, but also to all cases *pending* as of January 1, 2018. Therefore, because the increased quarterly fees in Trustee Program districts capture cases like this one—that was pending as of January 1, 2018—and the language of § 1930(a)(7) prior to enactment of the Act was discretionary as to Bankruptcy Administrator districts, the U.S. Trustee's argument that § 1930(a)(6)(B) and (a)(7) are actually uniform is at odds with reality.

34

C.

Finally, the U.S. Trustee claims that the differences in the Trustee Program and the Bankruptcy Administrator system are not geographically based. Instead, they are based on the unique budgetary challenges confronting Trustee Program districts. All Trustee Program districts, according to the U.S. Trustee, are treated uniformly, and, therefore, we should only inquire whether the increased fees apply with the same force and effect in the Trustee Program districts.

But this argument misses the forest for the trees. Justifying the differences here on the fact that the Trustee Program districts face the budgetary problems—the trees—ignores the fact that those districts only face the budgetary problems because Congress treated them differently in the first place—the forest. And Congress did that purely based on geography.

To be fair, statutes accounting for geographic differences are not automatically a problem. *See Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 159 (1974) ("The uniformity provision does not deny Congress power to take into account differences that exist between different parts of the country, and to fashion legislation to resolve *geographically isolated* problems." (emphasis added)). But they are a problem if not aimed at addressing issues that are geographical in nature. Here, the quarterly fee statute does not "account [for] differences that exist between different parts of the country . . . ." *See id.* at 159. It is not a congressional attempt "to resolve geographically isolated problems." *See id.* Indeed, the difference in bankruptcy systems is arbitrary and financially damages unsecured creditors in every state other than Alabama and North Carolina.

In fact, a September 1992 report by the United States Government Accountability Office found no justification for having both the Bankruptcy Administrator and Trustee Programs. GAO Report at 16 ("We could not find any justification for continuing two separate programs."). Consistent with that, when faced with the question at oral argument whether there was anything geographically distinct about Alabama or North Carolina that justified a different approach in those states, the U.S. Trustee, to his credit, conceded there was not. While the uniformity provision of the Bankruptcy Clause "was not intended to hobble Congress by forcing it into nationwide enactments to deal with conditions calling for remedy only in certain regions," *Blanchette*, 419 U.S. at 159 (internal quotation marks omitted), it is a necessary safeguard to prevent laws from arbitrarily damaging creditors and debtors as a result of regionalism. Accordingly, while the constitutionality of the two types of bankruptcy systems is not before the court, I would nonetheless hold that the amended quarterly fee statute, as applied to the Liquidating Trustee, violates the Bankruptcy Clause.

## III.

Words have meaning, and the words of the Bankruptcy Clause are clear. I do not reach my conclusion lightly, as I recognize that, "[i]n considering any constitutional attack on a federal statute, a court presumes that Congress has complied with the Constitution." *United States v. Comstock*, 627 F.3d 513, 518 (4th Cir. 2010). However, no matter how you slice it, uniform means not different. That was true when the Constitution was drafted,

36

and it is still true today. Thus, for the reasons stated above, I would find that the amended

quarterly fee statute is unconstitutionally non-uniform.